# Winter and Hartman *versus* Walter.

*Admissions of Parties.—Construction of Married Woman's Act.—Presumption of Ownership by Husband.*

1. In an action of ejectment by a sheriff's vendee against a married woman and her husband, for real estate sold under a judgment against him, but which was claimed by her as her separate property, the admissions of her vendor at the time when he received the deed, under which he held the property, which had been used by her to show an equitable title in her husband, in a former action of ejectment brought against her by the representative of said vendor, were held to be her own admissions by adoption, and, as such, competent evidence of the fact which they tended to establish.

2. Where the record shows that the wife joined in the defence, whatever was done on the trial in support of it is to be taken as her own act, and her absence is not a reason for rejecting concessions or admissions made by her.

3. As before the passage of the Married Woman's Act of 1848 the possession of money by a wife, or of anything purchased with it, was in law the possession of her husband, even though she might have had an estate settled to her separate use; so since that act, though it has worked many important changes in the marital relations, his interest in his own property is not dis-

[Winter and Hartman *v.* Walker.]

turbed by it, nor has the *primâ facie* presumption of ownership above stated been destroyed. The reason for this presumption in the first instance is stronger now than before.

4. The purchase of real or personal estate by a wife amounts to nothing, unless it be accompanied with full and clear proof that she paid for it with her own separate funds. Proof that she had the means of payment is not sufficient. In the absence of such proof the presumption is a violent one that her husband furnished the means of payment.

5. Gamber *v.* Gamber, 6 Harris 363, affirmed.

ERROR to the Common Pleas of *Snyder county*.

This was an action of ejectment brought by Christian Walter against Henry M. Winter, tenant of Mrs. Mary Ann Hartman, to recover a two story frame house and lot situate on the Isle of Que in Snyder county, containing about one quarter of an acre with the appurtenances. By leave of the court, Mrs. Hartman was substituted as party defendant.

The property in dispute in 1852 belonged to John Hartman, Jr., the husband of defendant, and was sold by the sheriff to one George Adams for the sum of $1000. At the same sale Mr. Adams bought a vacant lot for $200, and a brick house and half lot for $600, both of which were sold as the property of John Hartman, Jr. By a verbal agreement with Mrs. Hartman, Mr. Adams agreed to reconvey this property to her on receiving the money which he had paid for it at sheriff's sale, to wit, $1800, under which Mrs. Hartman entered into and retained possession of the frame house and lot and the vacant lot. Dying soon after, Mr. Adams provided in his will for the consummation of this verbal agreement.

Failing to pay the purchase-money, an action of ejectment was brought in January 1855 against Mr. and Mrs. Hartman by the surviving executor of Mr. Adams, who recovered a verdict and judgment for the frame house and lot and the vacant lot which was in her possession. This was followed by an arrangement between the executor and Mrs. Hartman under which this property was conveyed to her for $1200 which, it was alleged, was paid partly in cash and by a judgment to the executor, and partly by a sum which it was said that Hartman had advanced on the purchase-money when the property was sold by the sheriff to Mr. Adams. About this, however, there was some controversy.

Christian Walter, the plaintiff in this suit, who held a judgment against John Hartman, Jr., in 1851, had it revived by *scire facias*, and on the 17th of November 1858 purchased the property at sheriff's sale, and brought this action to recover the possession as the sheriff's vendee of the interest which John Hartman, Jr., had therein.

On the trial the plaintiff offered to prove that some time in July 1852, witness had sold the property in dispute as sheriff of Union

county, "in which" this property then was; that it was purchased by John Adams for the sum of $1000; that in September 1852 he executed a deed to George Adams from himself; that John Hartman paid him between seven and eight hundred dollars in money of the consideration mentioned in the said deed, and at the same time Adams declared in the presence of Mr. Thomas that he had claims of John Hartman in his hands, and that as soon as he had collected them he would arrange the balance; that the witness on the stand, as well as other persons, were called by the defendant, Mrs. Hartman and John Hartman as witnesses in the case brought by Jacob Ott, executor of George Adams, deceased, against John Hartman and wife, No. 12, February Term 1855, to prove these facts; and that Mr. Adams took no title by his purchase at sheriff's sale.

This was objected to:—1st. Because the declarations of George Adams in his lifetime, cannot affect Mrs. Hartman, the vendee under Mr. Adams's title.

2d. No writ shown on which this property was sold.

3d. Not shown that John Hartman had any lien-creditors that the sheriff's sale did not reach to pay.

4th. That the evidence offered in former ejectment, not between the same parties, cannot affect Mrs. Hartman.

5th. That the conveyance from the executor of George Adams, deceased, cannot be affected by the evidence proposed to be given in this offer.

6th. Because the evidence offered is irrelevant to this issue.

The court overruled the objections, and admitted the evidence, which ruling constituted the first assignment of error.

The second and third assignments of error were unimportant, and were not pressed.

The fourth assignment of error was to the answers given by the court below, to the first, third, fourth, fifth, seventh, eighth, ninth, and tenth points, made on the trial by defendant's counsel, which said points and answers were as follows, to wit:—

1. That real property purchased by a married woman since the passage of the Act of 11th April 1848, with her separate funds, is not liable for her husband's debts, and in case an attack is made on such purchase by her husband's creditors, all she is bound to prove in the first instance is, that she had separate funds which were not derived from her husband, and by her so proving, the "*onus probandi*" is cast on the person contesting her ownership to show that it was not purchased with her separate means.

Answer: "Property purchased by the wife with her separate funds is not liable for her husband's debts; but, in case of an attack upon her purchase by her husband's creditors, the law is not that all she is bound to prove in the first instance is, that she

[Winter and Hartman *v.* Walter.]

had separate funds not derived from her husband, and by her so proving, that the *onus probandi* is cast on the person contesting her ownership, and we refuse to answer as requested."

3. That if such married woman should only pay a part of the purchase-money, and receive a conveyance of the legal title, no person could gainsay her title except the vendor, his heirs or creditors.

Answer: "As applicable to the facts in this case, we refuse to answer as requested. There may be purchases made by a married woman where the law would be as here stated; as a general principle the position is correct, but the creditors of the husband of Mrs. Hartman under the circumstances in evidence may gainsay it, if the facts he alleges are supported by the evidence."

4. That the purchase by George Adams, at the sale held by Sheriff Thomas of the property in controversy, and the receipt of said sheriff's deed of 13th September 1852, duly acknowledged in open court on the 16th of same month, vested in him (Adams) a legal title in fee simple, and the subsequent conveyance to Mrs. Mary Ann Hartman, vested in her a valid title, and one which could not be disturbed by the creditors of her husband.

Answer: "We refuse to answer as requested; this will still depend on the facts."

5. That even if John Hartman did furnish some of the purchase-money, or loaned it to Mr. Adams in his lifetime to pay over to Sheriff Thomas, it would not affect Mr. Adams's title, though the money thus advanced might be attached in his hands, or in the hands of his legal representatives.

Answer: "If Mr. Adams purchased for himself, the law would be as here stated; but not so, if he purchased with the intent alleged by the plaintiff; that is, if the means were furnished by John Hartman to George Adams on this purchase."

7. It gives Mr. Walter, the plaintiff, no right to recover in this action, even if the executor did embrace in the consideration mentioned in the deed to Mrs. Hartman, some seven hundred dollars, alleged to be advanced by John Hartman to Sheriff Thomas.

Answer: "We refuse to answer this point, as applicable in this case, as requested."

8. That the evidence offered on the part of defendant, on the trial of the ejectment, brought by the executor of George Adams, deceased, against John Hartman and Mary Ann his wife, cannot prejudice her right, or in any way affect her title derived from the executor and heir-at-law of Mr. Adams, and especially when she was not present when said evidence was offered.

Answer: "We refuse to answer this point as requested, for the reasons we gave on admitting the evidence to which it refers."

[Winter and Hartman *v.* Walter.]

9. That Mrs. Mary Ann Hartman has shown such a title to the property in controversy as will prevent plaintiff's recovery.

10. That under the evidence in the cause, the defendants are entitled to a verdict as a matter of law.

Answer to 9th and 10th points : "We refuse to answer these points, as a matter of law, as requested."

The fifth assignment of error was to the answer given by the court below, to the fourth and fifth points of plaintiff's counsel, which said points and answers were as follows, to wit :—

4. That the mere fact that Mrs. Hartman had borrowed money is not sufficient, from which the jury may infer that she paid the purchase-money to Jacob Ott, executor, &c., for the property in dispute. She must show that her own separate funds were applied in payment of the whole purchase-money, and as there is no such evidence in this cause, the plaintiff is entitled to recover.

Answer : "She might borrow money for the purpose of purchasing for herself a property, but the mere borrowing of money is not sufficient from which to establish the fact in a case of this kind, that the borrower applied the money as she said it was intended ; a person claiming to have so applied the money, and that it was her own separate funds that were applied in payment of the purchase-money, must prove it, and if there is no evidence in this cause of Mrs. Hartman borrowing money, or having separate funds of her own, and applying the same in payment of the purchase-money, the plaintiff will be entitled to recover."

5. That even if the title to the property in dispute was conveyed to George Adams in his lifetime, by the sheriff's deed from A. Thomas, Esq., sheriff of Union county, dated September 1852, yet as the same has been since conveyed by his executor, Jacob Ott, to Mrs. Hartman, it will not vest the title in her unless it be fully and clearly shown that the whole consideration-money was paid with her own separate funds, and in the absence of such proof the presumption of law is, that the husband furnished the means of payment, and that the law would cast the title upon John Hartman, Jr., by the deed to Mrs. Hartman, and his title passed to the plaintiff by the sheriff's deed to him, dated December 9th 1858, from Levi S. Herrold, sheriff of Snyder county, and that the plaintiff is entitled to recover.

Answer : "If it was not a gift of the lot by Adams to Mrs. Hartman, and that is not pretended, she must show the facts here stated, to entitle her to hold the property against the plaintiff, and he is entitled to recover ; and we answer as requested."

Under the charge of the court there was a verdict for the plaintiff; and judgment having been entered thereon, the defendants sued out this writ, and assigned for error the matters above stated.

[Winter and Hartman *v.* Walter.]

The case was argued here by *Geo. Hill, G. F. Miller*, and *Isaac Slenker*, for plaintiffs in error, and by *A. G. Simpson*, for defendant.

The opinion of the court was delivered, October 1860, by

STRONG, J.—The first bill of exceptions presents the question whether it was competent for the plaintiff below to prove that on the trial of a former ejectment brought by the executor of the will of George Adams, deceased, against Mr. and Mrs. Hartman, they set up an equitable title in John Hartman, the husband. The evidence offered and received by the court was, that on the trial of that ejectment, the defendants called witnesses to show that at the time when George Adams received from the sheriff the deed for the property, he acknowledged John Hartman had paid him between seven and eight hundred dollars of the purchase-money mentioned in the deed, and that he had in hand claims of John Hartman, with which he promised to arrange the balance as soon as he should collect them. The facts which the defendants then undertook to prove were very material to the issue tried in the present case, for, if John Hartman paid the purchase-money of the sale to Adams, then the property was liable to seizure and sale at the suit of Hartman's creditors. The objection, however, in the court below, was not more to the materiality of the facts alleged than it was to the mode of proof. It was urged that the declarations of George Adams, in his lifetime, could not affect Mrs. Hartman, the vendee under his title, and that she could not be affected by the evidence offered in a former ejectment not between the same parties. The first of these objections is founded upon a misapprehension of the nature of the offer. It was not proposed to use the declarations of George Adams as in themselves evidence against Mrs. Hartman, but as inducement to proof of her admissions. The kernel of the offer was, that she had made use of those admissions to defend her possession against the executor of the will of Adams. She had thus adopted the admissions as her own, and asserted the fact which they tended to establish. That such a mode of proof of a party's confessions is legitimate, the authorities abundantly assert. Thus records may be received in evidence in favour of a stranger to them, against one of the parties, as containing a solemn admission of a fact: 1 Greenleaf's Evidence 195, 527 a. So in Truby *v.* Seybert, 2 Jones 101, parol evidence was admitted of what a party had attempted to prove in another suit between himself and a stranger. It was admitted, not as conclusive, but as the assertion of the fact which the party essayed to establish.

The plaintiffs in error, however, contend that the evidence should not have been received, because, as they say, Mrs. Hart-

[Winter and Hartman *v.* Walter.]

man was not present at the trial of the ejectment brought by Ott against her husband and herself. This is an objection not taken in the court below, and there is nothing in the evidence to warrant the assertion of her absence from the trial. The record shows that she joined in the defence, and whatever was done on the trial in assertion or support of the defence was her act. Even the concessions of attorneys of record, in all matters relating to the trial and progress of the cause, bind the client, and are his concessions, though he may not be present when they are made: Young *v.* Wright, 1 Campbell 139; 1 Greenleaf 186. The defence in the former ejectment, set up by her, or at her instance, was then not only material, but the mode of proof was unexceptionable.

The second and third assignments of error were not pressed in the argument, and they require no particular notice. They are not sustained.

The remaining assignments relate to the charge of the court contained in their answers to the propositions for instructions to the jury submitted by the parties. The court was requested to charge the jury "that real property purchased by a married woman since the passage of the Act of the 11th of April 1848, with her separate funds, is not liable for her husband's debts, and, in case an attack is made on such purchase by her husband's creditors, all she is bound to prove in the first instance is, that she had separate funds which were not derived from her husband, and by her so proving, the onus is cast upon the person contesting her ownership to show that it was not purchased with her separate means." This the court refused to affirm, though admitting that property purchased by the wife with her separate means is not liable for her husband's debts. The point and the answer, of course, refer only to purchases made during coverture, and they raise the question whether a deed to the wife, accompanied by proof that she had the means to buy, without more, establishes *primâ facie* that she did buy for her own separate interest. Before the Act of 1848, the possession of money by the wife was, in contemplation of law, the possession of the husband. The money was presumed to be his, and this even though the wife might have had an estate settled to her separate use. Of course, when she used money in the purchase of either real or personal property, the presumption was that she used her husband's money, and the ownership of the thing purchased was vested in him whose money had procured it. The Act of 1848 doubtless made a great change in the marital relations. It secured the property of the wife to her as separate property, took away the husband's interest in and control over her estate, but it did not disturb his interest in his own property, nor annihilate any of the evidences of his title. That which before was

1 WR.—11

[Winter and Hartman *v.* Walter.]

evidence of ownership in him, is evidence now. If the possession of the wife was then *primâ facie* the possession of the husband, it must be equally so now. There is indeed, if possible, higher reason than formerly for presuming in the first instance that what the wife has in possession, and what she invests, is the property of her husband. Without such a presumption, the Act of 1848 would open a wide door to the perpetration of fraud upon creditors. The wife would become but a cover for her husband's property, and her possession a battery to repel his creditors.

It is the duty of the courts to protect the community against such a state of things. Accordingly it was held in Gamber *v.* Gamber, 6 Harris 363, that, in case of a purchase by a wife during coverture, the burden is upon her to prove distinctly that she paid for the thing purchased with funds that were not furnished by the husband. This was followed by Keeney *v.* Good, 9 Harris 349, where the subject was more fully discussed. In that case it was said that evidence that she purchased amounts to nothing, unless it be accompanied by clear and full proof that she paid for it with her own separate funds—not that she had the means of paying, but that she in fact thus paid. In the absence of such proof, the presumption is a violent one that her husband furnished the means of payment. This was the rule laid down in Gamber *v.* Gamber, and it must be rigidly adhered to. It applies to purchases of real estate as well as personal. The evils to be guarded against are equally great in both cases; and as the ownership of the thing purchased is not dependent upon the form of the title, but follows the ownership of the purchase-money, whether it be realty or personalty can make no possible difference. The rule laid down in Keeney *v.* Good, and Gamber *v.* Gamber, was reasserted in Bradford's Appeal, 5 Casey 513, a case in which the contest was not between the wife and a creditor of the husband, but between her and his next of kin. Other similar cases have followed, and decisions to the same effect have been made down to Walker *v.* Reamy, 12 Casey 410. The existence of the rule is no longer open to question. It was properly applied to the present case. Here the evidence was direct, dependent on no mere presumption, that about three-quarters of the purchase-money came from the husband, and it appeared that the wife had no separate estate. Most of the money with which she claimed to have purchased she borrowed years before or a year after the deed was made to her, and not about the time when the purchase-money was paid.

The next assignment is that the court refused to instruct the jury "that if a married woman should only pay a part of the purchase-money, and receive a conveyance of the legal title, no person could gainsay her title except the vendor, his heirs, or

creditors." To affirm this proposition as presented would be to assert that a purchase by a wife with her husband's money would protect the property against his creditors. Surely this ought not to have been expected.

The fourth point of the defendants requires no notice. It ignores the possibility of there having been any title other than the legal one conveyed to Adams, and subsequently to Mrs. Hartman, while the matter in controversy was whose was the purchase-money paid.

The next assignment of error is to the refusal of the court to charge the jury that if John Hartman did furnish some of the purchase-money or loaned it to Mr. Adams in his lifetime to pay over to Sheriff Thomas, it would not affect Mr. Adams's title, though the money thus advanced might be attached in his hands or in the hands of his legal representatives. If the advance of money by Hartman to Adams was a mere loan, doubtless it would not raise any trust in his favour, or affect the title of the purchaser at the sheriff's sale; but if the money was advanced as the purchase-money, and paid to the sheriff as the consideration of the sale, the advance was the acquisition of a title by Hartman. Whether it was paid by him to the sheriff as purchase-money or as a loan to Adams, the ostensible purchaser, the jury only could determine, and to them it was submitted. Whether a resulting trust arises in favour of one who pays only a part of the purchase-money of a tract of land, but not a definite or aliquot part, need not now be considered; for if any part of the sum bid at the sheriff's sale to Adams was paid by John Hartman, it was a definite part of the whole consideration, and its proportion to the whole is easily ascertainable. The court, therefore, could not properly have declared in answer to the defendant's fifth point, that, in the case supposed, Adams would be a mere debtor, and to no extent a trustee for Hartman. The point does not raise the question how far Mrs. Hartman could be prejudiced by the trust, if she bought from Adams without notice of it. In fact, the case did not turn on the existence or non-existence of such a trust, but rather on the question whether Mrs. Hartman bought from the executor of the will of Adams with her husband's money.

We perceive no error in the answers of the court to the defendant's seventh, eighth, ninth, and tenth points. The answer to the eighth has already been vindicated in what we have said relative to the first bill of exceptions, and our view of the answers to the others may be gathered from the former part of this opinion.

The last assignment of error embraces the answer of the court to the fourth and fifth points of the plaintiff below. The fourth presents the question already considered as to the effect of Mrs.

[Winter and Hartman *v.* Walter.]

Hartman's borrowing money without other proof of her applying it in payment of her purchase from Jacob Ott, the executor. Enough has been said upon that subject.

The fifth point of the plaintiff is obscure and badly drawn. Its meaning, however, appears to have been a request that the court should charge the jury that the plaintiff was entitled to recover, unless it had been fully and clearly shown that the whole consideration-money of the conveyance to Mrs. Hartman was paid by her own separate funds. The court affirmed the point, remarking that the law was as therein stated, if it was not a gift of the lot by Adams to Mrs. Hartman, and that that was not pretended. It is unjust to the court to assert that the case was taken from the jury. It may be the affirmation that if the whole of the purchase-money had not been paid by the wife, with her separate funds, the plaintiff was entitled to recover, would not have been strictly accurate, if it had been made without reference to the circumstances in proof in the case. But it must be taken in its connection, taken as it must have been understood by the jury; and, as such, it was but a repetition of the answer to the defendant's first point. It was a reassertion of the principle that, in order to sustain the wife's title against her husband's creditors, something more was necessary than a conveyance to her accompanied by proof that she had borrowed money, or had separate property of her own.

The judgment is affirmed.