## M. BROCK & CO. v. HENRIETTA BROCK.

ERROR TO THE COURT OF COMMON PLEAS NO. 2, OF
PHILADELPHIA COUNTY.

Argued March 30, 1887—Decided April 11, 1887.

1. The plaintiff below on the day of her marriage caused to be handed by her brother to her husband, Martin, $2,500 in two checks, one of which for $500 was her own property; the other for $2,000 was from her father. A few days after the marriage, Martin and his brother Max formed a partnership and Martin deposited the checks to the credit of the firm. In a suit brought subsequently by the wife against the co-partners to recover the money as a loan, the plaintiff's brother testified that the checks were handed to Martin as a loan to his firm, but that no agreement for interest or for the return of the money was made. For defendants Max testified that when the partnership was formed Martin deposited the checks to the credit of the firm, but that witness had no knowledge that it was a loan to the firm; and Martin testified that the checks were a marriage present: *Held*, that the plaintiff was not entitled to a verdict against the copartners.

2. A wife divorced from her husband, is incompetent to testify against him as to conversations occurring between them during the existence of the marriage relation.

Before MERCUR, C. J., TRUNKEY, STERRETT, GREEN and CLARK, JJ.; GORDON and PAXSON, JJ., absent.

No. 209 July Term 1886, Sup. Ct.; court below, No. 11, September Term 1884, C. P.

The proceeding in the court below was in Foreign Attachment by Henrietta Brock v. Max Brock and Martin Brock, trading as M. Brock & Co. The declaration was in the common courts in *Assumpsit*, with a bill of particulars in which "the plaintiff claimed to recover the sum of $2,500 loaned defendants March 19, 1883, with interest thereon." The pleas were, "*non assumpsit*, payment with leave, set-off, etc." The plaintiff and defendants resided in New York; the garnishee was A. E. Massman of Philadelphia.

*For the plaintiff*, James Ertheiler, her brother, testified: ". . . . . I handed these two checks on March 20, 1883, to ⌐

Martin Brock; he demurred to taking the check for $500. I told him he need not demur as my sister had authorized me to hand it to him as a loan to the firm; his firm. I do not remember anything else at that time. The money was Mrs. Brock's." On cross-examination: "I did not stipulate for any rate of interest on the money, nor was there any agreement to return it. He did not agree at that time or any other time to return it. My sister desired me to hand it to him as a loan to the firm. . . . . I did not know of the existence of the firm before I gave Martin the money."

Henrietta Brock, the plaintiff, sworn, and plaintiff proposed to prove by the witness that she was the wife of one of the defendants, having been married to him on March 19, 1883, and was divorced from him in January, 1886; and further, to prove by her testimony from whom the money came upon which suit was brought, and that defendant Martin Brock promised to return it. Objection was made to the admission of any testimony from this witness as to matters which took place after her marriage with Martin Brock. The objection was overruled and bill sealed for the defendants.[1]

. The plaintiff then testified: "I was the wife of Martin Brock and was married to him March 19, 1883. I was divorced from him in January, 1886. The $2,000 was a wedding present from my father. The $500 was my own. I instructed my brother to loan it to the firm. After we were separated in the year 1885, I had an interview with Martin Brock in Philadelphia, and he then said he would return me every cent; he has not returned it or any part of it." On cross-examination: ". . . . . I merely told James to loan the firm the money. . . . . I don't remember whether I mentioned the name of the firm or not at the time I gave the money to James. . . . ."

. Mrs. Minnie H. Ertheiler testified that she was present at an interview with Martin Brock in April, 1885, in New York, when he said to his wife, "you will get every cent of the money back."

The checks referred to, dated May 19, 1883, were then put in evidence, and, the plaintiff having closed, a motion for a compulsory nonsuit was overruled.

*For the defendants,* Max Brock, a defendant, was called and

testified: "The partnership was formed in March, 1883. It was sometime between the 20th of March and the end of the month. I did not borrow any money from James or Moritz Ertheiler. At the time I was not aware of any loan having been made to the firm by any one. My brother put into the firm $2,500. He put it in on condition that he was to have the right to draw out a good deal of it within a few days. He took out during his connection with the partnership a good deal more than he put in." On cross-examination: "The firm was composed of Martin Brock and Max Brock; it continued until May, 1884. . . . . He deposited the checks and we had an agreement to form a partnership. I knew nothing of the checks before the 20th of March, 1883."

Martin Brock testified: " . . . . . I was in New York city in my house the day of my wedding. James Ertheiler called me into one of the side rooms and said: ' As father did not make you any present he sent you this,' and he handed me an envelope containing the check for $2,000, and he added, 'I will give you this,' and he handed me an envelope containing a check for $500. I refused at first to take the $500, and told him he had done enough for me, but he insisted that I should take it. He said nothing about its being loaned." On cross-examination: "This $2,500 was handed me as a gift by James Ertheiler. It was a gift to me on my wedding day. . . . . The partnership was formed a day or two after my marriage, March 20 or 21. I indorsed the checks; they went into the partnership, and I drew out during its continuance more than I was entitled to. . . . . This money was not used to pay the firm debts."

When the case was closed on the evidence, the counsel for the defendants requested the court to charge the jury that, under all the evidence in the case, the verdict should be for the defendants, which point was refused.[2] The jury found a verdict for the plaintiff for $2,950, and judgment being entered thereon after a refusal of a new trial, the defendants took this writ, assigning for error

1. The admission of the testimony of Henrietta Brock.[1]

2. The refusal of the defendants' point.[2]

*Mr. Samuel W. Cooper* (with whom was *Mr. Mayer Sulzberger*), for the plaintiff in error :—

Opinion of the Court.

The agency of each partner for the firm commencing with the partnership, it follows that the firm is not liable for what may be done by any partner before he becomes a member thereof. So that, if several persons agree to become partners, and contribute each a certain quantity of money or goods for the joint benefit of all, each one is solely responsible to those who may have supplied him with the money or goods agreed to be contributed by him, and the fact that the money or goods so supplied have been brought in by him as agreed, will not render the firm liable: Col. Part., § 518, citing Greenslade v. Dower, 7 B. & C. 635; Dickinson v. Valpy, 10 B. & C. 141; and see upon the same point, Story Part., § 148; and it has been so decided in Pennsylvania: Brooke v. Evans, 5 W. 196.

So if a partner borrow money and give his individual note for it, it does not become a partnership debt by reason of the application of the money to partnership purposes: Graeff v. Hitchman, 5 W. 454. And where money is borrowed by one partner for his individual use, and he gives a note of the firm of which he is a member, and the proceeds of the transaction afterwards go into the business of such firm, the other members cannot be held liable, unless the money was put into the business with their knowledge and privity: Clay v. Cottrell, 18 Penn. St. 408. Donnally v. Ryan, 41 Idem 306, presented a much stronger case for the plaintiff than the present one, and yet it was held error to submit it to the jury.

No one appeared for the defendant in error.

OPINION, MR. JUSTICE MERCUR:

This suit was against two persons as copartners, one of whom had been the husband of the plaintiff. On the day of their marriage, the money for the recovery of which the suit was brought, was handed to him by her brother. That brother testified in chief that the money was his sister's; that Martin objected to receiving $500 thereof, but on being informed that she authorized it to be handed to him as a loan to the firm, he accepted it. On cross-examination, however, he testified that he did not stipulate for any rate of interest on the money, nor was there any agreement to return it; that he did not know of the existence of the firm before he gave Martin

Brock the money. He further swore that he did not know whose money it was, that his father drew the check for $2,000 and handed it to him, and that he never saw Max Brock, the other partner, in regard to this money.

The unquestioned evidence is that the money was handed to Martin before the copartnership was formed ; that Max had no knowledge of any money having been loaned to the firm by any person, and the money received by Martin was not used to pay the debts of the firm. There was no evidence to charge the firm with this money even if Martin did receive it as a loan. The whole evidence pretty clearly indicates that the money was handed to him as a wedding present to him and his bride. Their subsequent divorce produced disappointed expectations. The learned judge should not have permitted a verdict to be rendered against the copartners.

The plaintiff below was not competent to testify to a matter of a confidential nature which occurred between her and her husband during the existence of their marriage relation, although she was divorced before she testified.

Judgment reversed.