## Miller v. Tice et al.

*Smith & Paff* and *John D. Hoffman*, for plaintiff.
*R. C. Mauch*, for defendants.

PER CURIAM, Jan. 21, 1929.—The trial judge directed a verdict for the plaintiff. The defendants filed a motion for judgment *n. o. v.* without assigning any reasons at all, and at the same time filed a motion for a new trial, assigning merely the formal reasons. Upon the argument additional reasons for a new trial were filed by the defendants. No objection was made to the filing of these additional reasons by plaintiff, but the practice is not to be commended, and is in direct violation of sections 192 and 193 of the Court Rules. As, however, the briefs in this case, with one exception, seem to cover what was developed upon the argument, we shall treat the reasons as if they had been filed in time. The learned counsel for the defendants states his position in his brief as follows:

"Defendants contend that judgment *non obstante veredicto* should be entered because:

"*(a)* The *allegata* and *probata* do not agree; and,

"*(b)* The claimant has not established a separate estate.

"That if the reasons for judgment *n. o. v.* should not prevail, a new trial should be granted because of the court's errors in ruling out the testimony of plaintiff."

The question as to the *allegata* and *probata* was first brought to the attention of the trial judge by an objection made after a number of witnesses had testified on page 98, and again on page 168, and the objections were overruled by the court. No plea of surprise was made. Thirdly: By a motion for a non-suit, assigning the variance as a reason therefor. We are unable to find that the question was raised in defendants' points as asserted in the brief, but under the rule laid down by Mr. Justice Schaffer in Kehres *v.* Stuempfle et al., 288 Pa. 334, the defendants are not to be considered in default because they did not assign the variance specifically in their motion for judgment. What is the alleged variance? It seems to be that plaintiff declared that the date of her loan to her husband was May 31, 1925. The pleader, no doubt, had in mind the date when it appeared from the evidence that the bookkeeper had made an entry in the decedent's book-account of May 31, 1925, Sallie E. Miller, $40,000, opposite to which are the letters "O K C. F. M." It appeared that the actual date of the loan was in April, 1922, when Sallie Miller received a check for $40,000 from the State in the condemnation proceedings, which check was endorsed to her husband. That the date is immaterial appears from many authorities. We examined them all in Cardinal Dougherty *v.* Sulkin, 18 Northamp. Co. Repr. 376. That action was trespass, but in our opinion we referred to the authorities in criminal cases and also those in *assumpsit.* It is not necessary to repeat them here. They show that the date is immaterial. Plaintiff did not amend her statement, but preferred to stand upon it, and defendants, as we said above, did not plead surprise, probably for the reason that they could not have done so in good faith. Exhibit No. 10 shows specifically they knew the existence of this claim, and it could scarcely be asserted that they did not know that the $40,000 were the proceeds of the condemnation of the Pacific House, especially where they made an offer to prove by one of the executors why the Pacific House property was originally placed in Mrs. Miller's name. We have examined the many authorities cited by the learned counsel for the defendants, and, in our judgment, they have no application to the present case. The reason for the rule is well stated in the syllabus of National Bank *v.* Lake Erie Asphalt Block Co., 233 Pa. 421, as follows: "The purpose of pleading is to form a clear and distinct issue for the trial of the cause between the parties. The statement should be sufficiently explicit to enable the defendant to prepare his defense. A plaintiff cannot file a statement which avers one cause of action and be permitted on the trial to prove a different cause of action. He must state the claim on which he will rely to recover so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet." There was no change in this cause of action, and the testimony which was admitted with respect to the entry referred to above was specifically eliminated from the case in the charge of the learned trial judge, together with other testimony. The trial judge relied entirely on the legal presumption that there was a loan of $40,000 by the plaintiff to her husband, and that that presumption was not rebutted by the defendants.

The second reason is that the plaintiff did not show that she had a separate estate. The position of the learned counsel for the defendants is that, before the plaintiff is permitted to recover, she must show that she had a separate estate independently of her husband; for illustration, an estate that she got by descent from her father or mother, or an estate that she had accumulated out of her separate business. His argument entirely overlooks the fact that a woman can acquire property by gift from her husband, and overlooks the presumption that when property is in her name it is presumed to be a gift from her husband. It was conceded on the argument that no rights of creditors were involved. The decedent possessed at the time of his death an estate worth $300,000, which will all go to his widow and heirs, although at one time, the exact date not being given, he went into bankruptcy and received his discharge. Yet, when Mrs. Miller bought this property from the Marstellars on Sept. 29, 1902, he had no creditors. The consideration for her deed was $20,000. The agreement of sale showed two receipts from Sallie Miller, amounting to $1000. The balance was to be paid for in cash, and a mortgage for $5000. This mortgage was specifically paid off by the sale of a portion of the property to the Lehigh Valley Railroad Company. In 1921 the remaining property was condemned by the State, and Mrs. Miller was paid $40,000. In the condemnation proceedings Mrs. Miller employed Mr. Rupp and General Doster. The property was insured in the name of Mrs. Miller, and, according to the testimony of a daughter of Mr. and Mrs. Miller, Mary Meune, she was present when Mrs. Miller received the check for $40,000, and Mr. Miller asked his wife to loan it to him, as he needed it for business enterprises (page 98). Mrs. Miller agreed to do that if Mr. Miller would return it whenever she wanted it. Mr. Miller said, "All right" (page 99). In May, 1925, she testified that her mother said she would like to have the money back, as she was getting no interest on it, and her father asked her to let him have it longer, and he agreed to pay 6 per cent. interest. The exact words were: "I would like to have the money a little longer, as I need it and I will pay you 6 per cent. interest." The testimony of the daughter was objected to, for the reason above given. The effect of this testimony showed that, as between Mr. and Mrs. Miller, Mrs. Miller had always been regarded as the owner of the property, and that the proceeds of the property took the place of the property itself. No one of the authorities cited by the learned counsel for the defendant is, on its facts, like the present one. As we said above, no rights of creditors were involved and Mr. and Mrs. Miller lived together in peace and harmony from 1902, when she bought this property, until the time of his death on Sept. 1, 1925. The first of his authorities (Moore v. Moore, 165 Pa. 464) was a controversy between a man and his wife. It appeared from the undisputed testimony, that the wife contributed a certain sum for the purchase of real estate and her husband the balance. The reason why the husband put the title in his wife's name was undisputably shown by independent testimony. The wife also testified, and her testimony established the same fact, that the purchase of the real estate was a "joint enterprise." The husband and wife had difficulties and separated. After the real estate was sold the proceeds were invested in the husband's name with the wife's consent. The master reported in favor of dismissing the bill for want of sufficient proof. The lower court overruled the master and held that the testimony was not sufficient to rebut the presumption that a gift was intended. The Supreme Court, after weighing the testimony, held that the lower court was wrong and entered a decree giving the plaintiff the exact amount of money, with interest, that she had put in the enterprise. This case may have some bearing

upon the question whether a new trial should be granted, but it does not support the proposition that the plaintiff must show that she had a separate estate. McConville *v.* Ingham et al., 268 Pa. 507, was a bill in equity. The plaintiff was a widow, ninety-two years of age. She sought to recover certain property in the defendant's granddaughter's possession. The granddaughter set up that it was a gift, and admitted that her grandmother was physically and mentally weak at the time of the transaction. The lower court overlooked that testimony and decided the case as if it was a gift between persons of sound minds and bodies. The sole question involved was as to where the burden of proof was, and the case has no analogy to the present case. Topley *v.* Topley's Admin'rs, 31 Pa. 328, was a case where the wife did not claim as a gift from her husband, but claimed that the money was her separate estate, which she could not prove, and, as appears from the end of the opinion, her husband died leaving creditors. Johnston *v.* Johnston's Admin'r, 31 Pa. 450, was an action by a wife against her husband's estate. It appeared that she had received money from her father's estate, part of which was paid before the Act of April 11, 1848, P. L. 536, and part was received after the act. The trial judge fell into error in answering a question of the jury. Mr. Justice Thompson, after the most sympathetic remarks as to the difficulty of a trial judge when suddenly called upon to answer a question propounded by a jury, proceeded to explain the difference between the two classes referred to. The case has no bearing on the present proposition. Winter and Hartman *v.* Walter, 37 Pa. 155, was an action of ejectment. The plaintiffs sought to recover property standing in the name of Mrs. Hartman, on the ground that it was not her property but her husband's. The facts were very much involved, but it is very much manifest that whatever was said by Mr. Justice Strong in his opinion had reference to the fact that the rights of creditors were involved. The same may be said of Walker *v.* Reamy, 36 Pa. 410; Rhoads *v.* Gordon, 38 Pa. 277; Aurand *v.* Schaffer, 43 Pa. 363; Tripner et al. *v.* Abrahams et al., 47 Pa. 220; and Baringer *v.* Stiver, 49 Pa. 129; Hause *v.* Gilger, Admin'r, &c., of Hause, 52 Pa. 412. These cases were all decided under the old Act of April, 1848. Jack *v.* Kintz et al., 177 Pa. 571, was decided in 1896, after the passage of the Acts of June 3, 1887, P. L. 332, and June 8, 1893, P. L. 344. The Supreme Court held that these acts did not change the rules laid down in above cited cases, where the contest was between the wife and her husband's creditors. In the case of a gift an entirely different situation is presented. The subject-matter, admittedly, comes directly from a husband, and goes to the wife, and the term "separate estate," as discussed in above authorities, has no reference to the present case. It has been held in Thompson *v.* Allen, 103 Pa. 44, that "A conveyance of real estate by a husband directly to his wife by way of gift, if not in fraud of the husband's creditors, will be sustained on equitable principles. In such case it is immaterial that the property so conveyed is all or the greater portion of the husband's property." See, also, Westmoreland Guarantee Building & Loan Ass'n *v.* Thomas, 207 Pa. 513. It follows, therefore, that the motion for judgment *n. o. v.* by defendants must be denied.

Should a new trial be granted? Of course, the trial judge could not be accused of error in not granting a non-suit. When he refused that, the case was open for the defendants to make their defense, which they proceeded to do, and it was incumbent on them to rebut the presumption that Mr. Miller was indebted to his wife. In Wormley's Estate, 137 Pa. 101, the syllabus is: "The rule of law applicable in a case where a husband has received money which belonged to his wife is that the mere fact of such reception makes him

her debtor, and no affirmative proof by the wife that he received it as a loan, and not as a gift, is required. The law presumes a loan from such a receipt of money, and, therefore, if it be alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift and not as a loan, the burden is upon those who make such allegation to maintain it by proof." See, also, Hawley v. Griffith, 187 Pa. 306, and Loeffler's Estate, 277 Pa. 317. The learned counsel for the defendants contends that "a new trial should be granted because of the court's error in ruling out the testimony of plaintiff." In other words, he contends that if the plaintiff had been permitted to testify, she would have given evidence that would have rebutted the presumption above referred to. It is not patent how that result would be reached, especially in view of the fact that the learned counsel for the plaintiff sought to have plaintiff's testimony admitted in the case. The record with respect to this witness is so exceptional that it would almost seem as if counsel were bluffing with their various offers. The only consistent position was that taken by the learned trial judge, who held throughout that she could not testify on the ground of "public policy." First, she was called (page 168) as a witness in her own behalf. Defendants' counsel objected to her as incompetent to testify. That objection was sustained, and the exception was noted for the plaintiff. She was then called by the defendants on cross-examination. Plaintiff's counsel asked for an offer of proof. The defendants' counsel replied that as she was called on cross-examination, no offer of proof was required (page 261). Plaintiff's counsel then objected to her testifying as to matters of a confidential nature which happened between her and her husband. The court sustained that objection and gave the defendants an exception. Defendants' counsel called the plaintiff as his witness, and plaintiff's counsel asked for an offer of proof. Then follows the offer (pages 262, 263, 264, 265, 266). Then, on page 267, plaintiff's counsel's objection is found.

The second reason is: "It is objected to that it pertains to a confidential communication between the husband and wife concerning what she alleges is her separate property and estate." The court sustained that objection and gave the defendants a bill. Defendants' counsel then offered to examine the plaintiff as to matters which occurred after her husband's death between her and the executors, and no objection was made to that, and she was examined at considerable length about matters connected with this $40,000 claim after her husband's death. No very satisfactory definition as to what communications are and what are not privileged between husband and wife is to be found in the Pennsylvania decisions. In Wigmore on Evidence, § 2285, there is a discussion under the title "General Principle of Privileged Communications." He said: "Looking back at the principle of privilege as an exception to the general liability of every person to give testimony to all facts inquired of in a court of justice, and having in view that preponderance of extrinsic policy which alone can justify the recognition of any such exception (ante, sections 2192, 2197), four fundamental conditions may be predicated as necessary to the establishment of a privilege against the disclosure of communications between persons standing in a given relation. (1) The communications must originate in a confidence that they will not be disclosed; (2) this element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal

of litigation." On the next page, the author said: "In the privilege of communications between husband and wife, all four conditions are again present; and the chief variance of judicial opinion in defining the privilege *(i. e.,* in holding, as some do, that the protection extends to all communications, or, as others do, to confidential communications only) is due to a question as to the fulfillment of the first condition." That is to say, the test as between husband and wife must be that what was said between them will not be disclosed. Having that in mind, taking up the offer (page 262), what is meant by the following extracts: "Mr. Miller was at that time in the wholesale and retail business of huckstering green groceries and fish; that having prudent business reasons, he did not wish to take the title in his own name, but instead took title in the name of his wife, Sallie E. Miller; . . . that he continued in business, putting more property in his wfie's name, became indebted, went into bankruptcy; that after his discharge some of this property was transferred by his wife to her husband," and that with respect to the Pacific House property in suit, "the title still remained in the name of Sallie E. Miller, and the said Charles F. Miller permitted it to remain in her name, for the reason, as expressed by him to her and agreed upon orally between them, that the title should continue to remain in her so that if at any time the railroad company might need the balance of the property or the so-called hill-to-hill bridge was built, the building of which at that time was already agitated, a jury of award would probably give a woman more money than it would give a man" (pages 264 and 265). Does not this show conclusively that these were privileged communications? If Mrs. Miller were permitted to testify to such things, it would show that she and her husband conspired to defraud his creditors; that she held his property when he went into bankruptcy and afterwards transferred it over to him instead of transferring it to his creditors, and that they were keeping the property because of the well-known fact that a woman could get more damages than a man in condemnation proceedings. Public policy imperatively demands that such a condition, even if it did exist, should never be disclosed to the public, and we think the authorities in Pennsylvania support this view. In Taylor's Estate, 4 Dist. R. 691, Judge Penrose said: "The calling of the accountant for cross-examination by the exceptants had the effect, both under the decisions and the express provisions of the statute (Seip *v.* Storch, 52 Pa. 210; Act of May 23, 1887, P. L. 158) of removing all objections to her competency on the ground of interest. It did not, however, remove her disqualification, under section 5 of the act, with regard to confidential communications, and such, it would seem, was the character of the declarations as to the notes alleged to have been given for the accommodation of her husband—the decedent." In Cornell *v.* Vanartsdalen, 4 Barr, 364, on page 374, Mr. Justice Rogers said: "But it is said to be against the policy of the law to permit a wife to testify for or against the estate of her deceased husband; that parties are excluded from being witnesses for themselves, and that the same rule applies to husband and wife, neither of them being admissible as a witness in a cause, civil or criminal, in which the other is a party. The exclusion is founded partly upon the identity of their legal rights and interests and partly on the principles of public policy. And neither is it material, in some cases, that this relation no longer exists. The great object of these rules being to secure domestic happiness by prohibiting *confidential communications* from being divulged, the rule is the same to that extent, even though the other party is no longer in being or has even been divorced and married to another person. The rule is the same in its spirit and extent as that which excludes confidential communications made by

a client to an attorney. And in analogy to this rule, it is held that the wife, after the death of the husband, is competent to prove facts coming to her knowledge from other sources, not by means of her situation as wife, notwithstanding they relate to the transactions of her husband. The prohibition, where she is a competent witness, being divested of all interest, extends to confidential communications alone, or such as come to her knowledge from her domestic relation." In Hitner's Appeal, 54 Pa. 110, the syllabus is: "Husbands and wives cannot give evidence for or against each other of anything that has come to their knowledge through the confidence of the marriage relation, though the other party were not living. The wife was, therefore, incompetent to prove cohabitation after the separation." On page 117, Mr. Justice Read cites many of the authorities on this subject, both in England and in other states, and approves what we have quoted above from 4 Barr, 374. See, also, Robb's Appeal, 98 Pa. 501. In Brock & Co. v. Brock, 116 Pa. 109, the plaintiff was the wife of Martin Brock, a partner in the firm of M. Brock and Company. She was called to prove that she loaned money to the firm, and that her husband promised to repay it with interest. After the loan, the parties were divorced. The lower court, against the objection that this was a privileged communication, permitted her to testify, Mr. Justice Mercur saying: "The plaintiff below was not competent to testify to a matter of a confidential nature which occurred between her and her husband during the existence of their marriage relation, although she was divorced before she testified." It is further contended that the right of objecting to the wife on the ground that the communications were privileged was personal to the decedent, and that the defendant's executors have the same right to waive the privilege that the decedent would have had, and that when they called her, it was a waiver. No case has been cited in support of that position, and it is doubtful whether any such authority exists. As the cases above cited show, the basis of the decision rests upon public policy, and the objection could not be waived. In fact, Mr. Justice Stewart, in a case that we have in mind (the volume and page cannot now be given), expressly said that, even if counsel did not object to the witness testifying as to privileged communications, it was the business of the court to object. In our judgment, the whole offer was properly excluded on the ground of being a privileged communication. If, however, some of it was proper and some not, it was not the business of the court to separate that which was admissible from the inadmissible: Evans v. Evans, 155 Pa. 572; Jacoby v. Insurance Co., 10 Pa. Superior Ct. 171; Com. v. Auerbach, 71 Pa. Superior Ct. 54; Electric Storage Battery Co. v. Sechrist, 86 Pa. Superior Ct. 477; Ickes v. Ickes, 237 Pa. 582. In Hunter v. Bremer, 256 Pa. 257, Mr. Justice Moschzisker said: "When evidence offered is relevant in part only, the court is not bound to separate the good from the bad, but may reject it as a whole: Smith v. Arsenal Bank, 104 Pa. 518, 521; Evans v. Evans, 155 Pa. 572, 577; Mease v. United Traction Co., 208 Pa. 434, 436." That case was followed in Justice v. Watkins et al., 276 Pa. 138. If, therefore, the entire offer of proof was incompetent on the ground of privileged communication, or if any part of it was incompetent on that ground, and as to that part, the quotations above from the offer conclusively show that part to be privileged, what is there in this case to rebut the presumptions of law and to require the submission of the case to a jury? A presumption of law, until it is overthrown, is equivalent to evidence offered on one side and a failure of the other side to put in any evidence at all. In Mahon's Estate, 202 Pa. 201, which was affirmed by the Supreme Court on the opinion of President Judge John Stewart, a case not like the present one

on its facts, but where a husband had collected income from his wife's real estate, and where, as the judge said, an auditor had not found the facts, except a few, the judge said the case was to be decided on presumption. He said, on page 203: "Limited to these meager facts, it is easy to see how a strictly legal determination of the case may not accord with the actual merits; for, as the case is thus presented, it resolves itself into a question of what the law will presume from the transaction, whether a gift of this income to the husband, or a relation of debtor and creditor, with respect thereto. Neither side has offered any evidence to overcome a presumption adverse to its own claim, and it follows necessarily that to lead in the start is to win in the race. We take the case as it is presented." On page 205 he said: "By the course of the evidence on both sides, the case is made to turn on presumptions which the law raises from the transaction, and we are of opinion that these presumptions leave Mr. Mahon a debtor to his wife's estate to the amount of income he is shown to have received." In Richards v. Walp, 221 Pa. 412, a case as to the presumption of payment of a debt, Mr. Justice Fell said: "The debt sought to be recovered was due and demandable twenty-six years before suit was brought. The presumption of payment arose at the end of twenty years, and it had increased in strength each succeeding year afterwards. The burden of overcoming it was upon the plaintiff, and the sufficiency of the evidence offered was for the court: Reed v. Reed, 46 Pa. 239; Beale's Exec'rs v. Kirk's Admin'r, 84 Pa. 415. 'In a case like this, the defendant stands upon a presumption of law, which is binding alike upon the court and jury until invalidated by proof, and the plaintiff in rebuttal upon a presumption of fact only, which he claims to arise out of the evidence; whether or not the matters sought to be established are true is a question for the jury, but whether the facts and circumstances relied on, if true, would legitimately give rise to the presumption of fact referred to is necessarily a question of law for the court:' Gregory's Exec'rs v. Com., 121 Pa. 611. This presumption is equal to direct proof of payment (Sellers v. Holman, 20 Pa. 321), and it will prevail until overcome by direct proof of non-payment or the proof of facts and circumstances from which non-payment may be clearly inferred."

After carefully reading the testimony in this case, we are satisfied that the verdict as directed by the court was a proper one. While executors, especially where creditors' rights are involved, should protect the estate by defending the claims made against a dead man's estate, such as claims which are made by servants and nurses, who are presumed to be paid at stated intervals, yet where the estate is a very large one and the exact sum received by the wife can be traced with the certainty that it was traced in this case, and the real estate, which was the source of the fund, has remained so long in the wife's name, when she did get the money from the State and gave it to her husband, it was the strongest kind of a presumption that she was handing it to him as a loan, and we should think that the executors would be satisfied with the protection of a directed verdict by the court. Under these circumstances, there is no equity in asking that a new trial should be granted on the facts of the case. If it should be granted, it would have to be solely because there was error in the trial, and we have not been able to find any.

And now, Jan. 21, 1929, motion for a new trial is refused, and rule discharged. Motion for judgment non obstante veredicto by the defendants is refused, and rule discharged, and judgment is directed to be entered on the verdict in favor of the plaintiff upon payment of the jury fee, and the evidence taken upon the trial is certified and filed and made part of the record.

From Henry D. Maxwell, Easton, Pa.